CHRISTINA TUSAN (SBN 192203)
ctusan@ctusanlaw.com
ADRIAN BARNES (SBN 253131)
abarnes@ctusanlaw.com
TUSAN LAW, PC
680 E. Colorado Blvd. #180
Pasadena, CA 91101
(626) 418-8203
(626) 619-8253 (Fax)

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANTHONY ZANNETTINO** on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**IGLOO PRODUCTS CORP.**, a Delaware corporation,<br><br>Defendant. | **Case No.**<br><br>**COMPLAINT FOR:**<br><br>**(1) Fraud by Omission or Fraudulent Concealment;**<br>**(2) Breach of Express Warranty;**<br>**(3) Breach of Implied Warranties;**<br>**(4) Unjust Enrichment;**<br>**(5) Violation of the Song-Beverly Consumer Warranty Act;**<br>**(6) Violation of the UCL; and,**<br>**(7) Violation of the FAL**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Anthony Zannettino ("Plaintiff"), on behalf of himself and all others similarly situated ("Class Members"), by and through his attorneys of record, Tusan Law, PC, files this Class Action Complaint against Defendant Igloo Products Corp. ("Igloo" or "Defendant") alleging the following, based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## NATURE OF THE ACTION

1.     Defendant Igloo Products Corp. is a manufacturer of ice chests, coolers, drink containers, and supporting accessories. Igloo claims that one out of every three households in the United States has an Igloo product in their garage.[1]

2.     One of the products invented by Igloo, in or about 1994, was the wheeled cooler.

3.     Igloo continues to design, manufacture, and sell wheeled or rolling coolers.

4.     Igloo's rolling coolers are designed and manufactured with a tow handle which allows the cooler to be pulled along. Indeed, a primary selling point of Igloo's rolling coolers is that they can be pulled along through the use of the tow handle. The sole value of the wheels is that, in combination with the tow handle, they make the cooler towable or pullable. Sample images of an igloo rolling cooler with a tow handle are included below:



///

///

---

[1] *See* https://www.igloocoolers.com/blogs/news/cheers-to-75-years (last visited Feb. 27, 2025).



6.    Igloo advertises its rolling coolers for use in a variety of outdoor settings, noting features such as a "fish ruler" on the lid allowing users to measure their catch and "oversized wheels" which "provide all-terrain mobility."

7.    Unfortunately, consumers who purchased one or more than one million Igloo rolling coolers, which were manufactured prior to January 2024 and sold through a number of online and in-person retail stores between in or about January 2019 and in or about January 2025, received a defective, unsafe, and unusable cooler. Each of these coolers suffers from a significant product safety defect. The safety defect is confirmed by Igloo's recall of multiple different models of Igloo 90 Qt. Flip & Tow Rolling Coolers,[2] initiated on February 13, 2025 ("Recall").[3]

---

[2] The models that Igloo has identified as unsafe are those identified in the Safety Alert posed on Igloo's website on February 13, 2025 (see https://www.igloocoolers.com/pages/safety-alerts?srsltid=AfmBOootk1RFOq2isk4FgcvJKxBnhyqd742BZmg7W14V_Q0QO02s5It-) (collectively, **the "Rolling Coolers"**). These include Latitude 90 Roller (Model/SKU 34143), Maxcold Latitude 90 Roller (Model/SKU 27019), Maxcold 90 Roller (Model/SKU 34202), Latitude 90 Roller Maxcold (Model/SKU 34241), Latitude 90 Roller (Model/SKU 34389), Latitude 90 Roller (Model/SKU 34424), Latitude 90 Roller Maxcold (Model/SKU 34488), Latitude 90 Roller (Model/SKU34506), Latitude 90 Roller (Model/SKU 34527), Latitude 90 Roller Maxcold (Model/SKU 34547), Latitude 90 Roller Maxcold (Model/SKU 34553), Latitude 90 Roller (Model/SKU 34577), Latitude 90 Roller (Model/SKU 34578), Latitude 90/Roller Maxcold (Model/SKU 34591), Latitude 90/Roller Maxcold (Model/SKU 34608), Latitude 90 Roller (Model/SKU 34619), Latitude 90 Roller/Maxcold (Model/SKU 34624), Maxcold Latitude 90 Roller

8. Each of the Rolling Coolers has a tow handle that is used to pull the cooler along. These tow handles pose a serious hazard to users of the Rolling Coolers because their design and construction means that they can pinch the user's fingertips against the cooler, crushing, and even amputating, the user's fingertips.

9. According to the Recall notice, Defendant "received 12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations" related to the Rolling Coolers.

10. In the notice posted on Igloo's website as part of the Recall, Igloo acknowledges that the Rolling Coolers are unsafe and states that consumers should immediately stop using them.

11. The Recall process itself is entirely inadequate. Rather than actually recalling and replacing the unsafe Rolling Coolers, Igloo instead offers only to send a replacement handle kit to consumers with complex instructions on how consumers must remove the "recalled tow handle" and replace it with the "new tow handle."

12. Moreover, the Recall process requires consumers to register for and request remediation – which, as described above, they must attempt to install themselves even if they lack the dexterity and skills to do so. Given the danger of injury, including potential amputation associated with the tow handles, a remedy that requires consumers to remove the dangerous tow handles and

---

(Model/SKU 34689), Maxcold Latitude 90 Roller (Model/SKU 34724), Latitude 90 Roller (Model/SKU 34734), Latitude 90 Roller (Model/SKU 34750), Maxcold Latitude 90 Roller (Model/SKU 34752), Latitude 90 Roller (Model/SKU 34775), Ecocool Latitude 90 Roller/Maxcold (Model/SKU 34776), Maxcold Latitude 90/Roller (Model/SKU 34789), Latitude 90 Roller (Model/SKU 34799), Maxcold Latitude 90 Roller (Model/SKU 34800), Maxcold Latitude 90 Roller (Model/SKU 34818), Latitude 90 Roller Maxcold (Model/SKU 34841), Sportsman 90 Latitude Roller (Model/SKU 34844), Latitude 90 Roller (Model/SKU 34869), Maxcold Latitude 90 Roller (Model/SKU 34993), Latitude 90 Roller (Model/SKU 34999), Maxcold 90 Quart Eco Roller (Model/SKU 35003), Maxcold Latitude 90 Roller (Model/SKU 35019), Maxcold Latitude 90 (Model/SKU 35044), Maxcold Latitude 90 (Model/SKU 35045), Latitude 90 Roller (Model/SKU 35052), Latitude 90 Roller (Model/SKU 35053), Latitude 90 Roller (Model/SKU 35054), Latitude 90 Roller Maxcold (Model/SKU 35065), Latitude 90 Roller (Model/SKU 49870), Latitude 90 Roller (Model/SKU 49928), Latitude 90/Roller (Model/SKU 49937), Latitude 90 Roller (Model/SKU 49938); Maxcold/Latitude 90 Quart (Model/SKU 50680).

[3] A copy of the Recall notice posted on the United States Consumer Product Safety Commission website is attached hereto as **Exhibit A**.

then try to follow instructions regarding how they can themselves try to install replacement handles is wholly inadequate.

13.    Despite acknowledging that Rolling Coolers are unsafe and that consumers should stop using them immediately, Igloo estimates that the process for registration and receipt of a replacement handle kit will take between two and four weeks. Thus, the Recall process does not offer a timely remedy.

14.    The Recall process also provides consumers with no monetary remedy despite them having purchased a defective Rolling Cooler for between $80 and $140.

15.    In addition to the Recall process being unduly burdensome on consumers, and offering an inadequate remedy, the notice element of the Recall is also woefully inadequate. There is a significant likelihood that the majority of consumers who purchased or who currently own a Rolling Cooler will never learn of the recall.

16.    Without an adequate remedy made available to them by Igloo, Plaintiff, on behalf of himself, Class Members, and Subclass Members, seek damages and all other relief available under law and equity from Defendant. Plaintiff also seeks classwide injunctive relief, including a comprehensive notice program for the wide dissemination of a recall notice for the Rolling Coolers.

**PARTIES**

**A.    Plaintiff**

17.    Plaintiff Anthony Zannettino is a citizen of California, residing in the city of Eastvale, in Riverside County, California. In or about September 2023, Plaintiff Zannettino purchased a wheeled Igloo cooler with a tow handle, which was manufactured by Defendant and is subject to the Recall, from a Costco location in California.

**B.    Defendant Igloo**

18.    Defendant Igloo Products Corp. is a Delaware corporation. Igloo's principal place of business is 777 Igloo Rd, Katy, Texas 77494.

19.    Defendant designs, manufactures, distributes, markets, advertises, labels, and sells coolers, ice chests, drink containers, and various supporting accessories.

//

**JURISDICTION AND VENUE**

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for the Class and Subclass (as defined below) exceeds $5,000,000 exclusive of interest and costs, there are more than 100 members of both the putative Class and putative Subclass, and minimal diversity exists because a significant portion of putative Class and Subclass members are citizens of a state that is not one of the states of which Defendant is a citizen.

21.     This Court has personal jurisdiction over Igloo because the events and conduct giving rise to Plaintiff's claims occurred in this state. Igloo offers, markets, and sells its products to California residents, including Plaintiff, and sells its products at retailers located throughout California.

22.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(a)(1) and (c). A substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant regularly transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## I.     GENERAL ALLEGATIONS

**A. Defendant Igloo is an Industry Leader in the Cooler Market**

23.     Igloo is one of the largest manufacturers of coolers for the United States market, including California. In 2021, when it was acquired by Dometic Group for $667 million, Igloo had net sales for the previous 12 months of $401 million, with 92% of its net sales in the United States.

24.     Igloo promotes itself as "continuing to go ALL in on FUN, plus performance. Products built to exceed the needs and increase the enjoyability of road-trippers, campers, picknickers, parents, athletes, frontline workers, corporate warriors, you name it."[4]

25.     Igloo advertises the purported utility of its tow handles. With respect to the ECOCOOL Latitude 90 Roller Cooler, for example, Igloo states: "Flip-up tow handle reduces towing force by up to 50% for easy pulling." More generally, Igloo asserts that it "has the best selection of

---

[4] *See* https://www.igloocoolers.com/pages/about-igloo (last visited Feb. 27, 2025).

coolers with wheels and handles, making it easy to bring your snacks, drinks, and other refreshments wherever the party is headed."

26.    Dometic's Code of Conduct, which governs Igloo, also states that "Dometic shall make sure that our products are safe and are designed, developed, manufactured, marketed and sold in accordance with applicable laws, regulations and industry standards."[5]

**B.    The Rolling Coolers are Dangerous under Normal and Foreseeable Conditions**

27.    On February 13, 2025, Igloo instituted a "voluntary recall" for certain rolling coolers manufactured prior to January 2024 and sold through a number of online and in-person retail stores between in or about January 2019 and in or about January 2025.

28.    This Recall asserts that, with respect to the Rolling Coolers, "[t]he tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."

29.    Thus, it is clear that the Rolling Coolers, if used as intended, with the tow handle being used to pull the cooler, are totally unsafe and worthless. The tow handle, which is a significant selling point of the Rolling Coolers and the only means by which the Rolling Coolers can actually be pulled, constitutes a significant hazard to anyone using it.

30.    Put simply, Igloo's Rolling Coolers cannot safely be used because the tow handles, if used for their intended purpose of pulling the coolers, are completely unsafe and hazardous. Indeed, in its Recall notices, Igloo advises consumers to "immediately stop using the cooler."

**C.    Igloo's Recall of the Rolling Coolers is Wholly Inadequate**

31.    Igloo's Recall is poorly designed, ineffective, and wholly inadequate. It is unlikely to provide notice to the majority of affected consumers and the remedy on offer is inadequate. Implementing the Recall constitutes an unfair and deceptive trade practice.

32.    Through its Recall, Igloo offers a "handle replacement kit" to affected consumers. In order to obtain a handle replacement kit, consumers must visit a specific website and complete a registration process.

---

[5]    *See* Dometic, Our Code of Conduct, § 3.7 (Products), available at https://www.dometicgroup.com/en-us/sustainability/code-of-conduct (last visited Feb. 27, 2025).

33.     The consumers who receive the handle replacement kit are expected to remove the "recalled tow handle" from their Rolling Cooler and to install the "new tow handle."

34.     The "new tow handle" was implemented by Igloo in 2024, and, on information and belief, the "recalled tow handle" was only installed on Igloo coolers manufactured prior to January 2024.

35.     On information and belief, Igloo knew of the defective and unsafe nature of the "recalled tow handle" prior to January 2024, at the latest, when it began to design and manufacture the "new tow handle."

36.     Igloo continued selling Rolling Coolers with the "recalled tow handle," however, until January 2025, and did not initiate the Recall until February 13, 2025.

37.     The Recall process is inadequate because it burdens consumers who are already living busy lives with the task of reaching out to Igloo, registering with Igloo, requesting a handle replacement kit, receiving a handle replacement kit, reading written instructions included in the handle replacement kit and/or watching an instructional video which provides instructions on how to remove the recalled tow handle and how to install the new tow handle, removing the recalled tow handle, installing the new tow handle, and disposing of the recalled tow handle.

38.     Because this Recall process is burdensome, and replacement of the "recalled tow handle" requires considerable manual dexterity and skill to be completed and could expose the consumer to injury in the process of removal and installation of a new handle, the Recall process actually allows and encourages consumers to continue to use a product with the risk of severe injury.

39.     By putting the burden of remediation on consumers – many of whom will lack the skills required to complete the removal of the recalled tow handle and the installation of the new tow handle – Igloo is shirking its responsibility of remediating a defect that it incorporated into the design of the Rolling Coolers.

40.     The Recall process is also inadequate because the notice states that consumers should immediately stop using their Rolling Cooler, but does not provide for a timely remedy because, Igloo acknowledges, "[h]andle replacement kits will typically be delivered within 2 to 4 weeks of completing the registration process, although the time period may vary depending on your location."

41.     The Recall process also fails to provide consumers with an appropriate and adequate monetary remedy for purchasing a dangerously defective product. Igloo's recall notice states that Rolling Coolers were purchased in the United States for between $80 and $140 each. Yet, Igloo has not provided consumers with a monetary remedy. Indeed, consumers who visit the webpages on Igloo's website dedicated to the recall, and who visit the "FAQs" are even told **not** to try and take the cooler back to the store from which they bought it to seek a refund.[6]

42.     According to Igloo, approximately 1,060,000 Rolling Coolers were purchased in the United States between January 2019 and January 2025. These products were purchased in reliance on Igloo's representations and upon Igloo's reputation for producing quality products. Igloo was well aware that if its truthfully informed consumers of the dangers of using the Rolling Coolers, it would significantly impact sales.

43.     Prior to the Recall, Rolling Coolers were sold at Costco, Target, Academy, Dick's Sporting Goods and other physical stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites. The retail pricing range for the Rolling Coolers during this time was approximately $80-$140 per cooler.

44.     Each Rolling Cooler suffered from the same uniform defect regarding the tow handle which, unknown to consumers but known to Igloo, existed at the point of purchase and posed an unreasonable safety hazard. As such, Plaintiff and all reasonable consumers are victims of the unfair bargaining power between them and Defendant based on Igloo's superior industry knowledge.

## II.     NAMED PLAINTIFF'S ALLEGATIONS

### A. Plaintiff Zannettino

45.     In or about September 2023, Plaintiff Zannettino purchased a Rolling Cooler from Costco, near Eastvale, California.

---

[6] *See https://igloo90qtrecall.expertinquiry.com/us-faq?lang=en* (last visited Feb. 27, 2025) (Q. Can I take my cooler back to the store/place where I purchased it from to get a refund? A. No, please do not return your cooler to the store. Handle replacement kits will be sent by Igloo after registration is completed. To register, please fill out the recall registration form via the website www.igloo90qtrecall.expertinquiry.com.").

46.    Mr. Zannettino purchased an Igloo Cooler with a tow handle that is a Rolling Cooler subject to the Recall.

### III.    TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

*Discovery Rule Tolling*

47.    Within the time period of any applicable statutes of limitations, Plaintiff and other Class Members and Subclass Members could not have discovered through the exercise of reasonable diligence that the Rolling Coolers were unsafe and defective until – at the earliest – when Defendant began to acknowledge that the Rolling Coolers were unsafe and defective on February 13, 2025.

48.    Thus, Plaintiff and other Class Members and Subclass Members were not reasonably able to discover the defective and hazardous nature of the Rolling Coolers until at least February 13, 2025, despite their exercise of due diligence, and their causes of action did not accrue until, at the earliest, February 13, 2025.

*Fraudulent Concealment*

49.    Any applicable statutes of limitations have been tolled by Defendant's knowledge and active concealment and denial of the facts alleged herein. Plaintiff and other Class Members and Subclass Members could not have reasonably discovered the defective and hazardous nature of the Rolling Coolers prior to this class action litigation being commenced.

50.    Defendant is under a continuing duty to disclose to Plaintiff and other Class Members and Subclass Members the true character, quality, and nature of the Rolling Coolers, and yet it failed to do so. As a result of the active concealment by Defendant, including their failure to reveal the defective and hazardous nature of the tow handles on the Rolling Coolers as soon as they were aware of it, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

*Estoppel*

51.    Igloo was under a continuous duty to disclose to Plaintiff and other Class Members and Subclass Members the fact that Igloo knew about the dangerously defective nature of the Rolling Coolers.

52.     Igloo knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Rolling Coolers from Plaintiff and Class Members and Subclass Members.

53.     Igloo also knowingly made representations about the quality and safety of the Rolling Coolers.

54.     Plaintiff and other class Members and Subclass Members reasonably relied upon Defendant's knowing and affirmative representations and/or active concealment of the facts regarding the hazardous and defective nature of the Rolling Coolers.

55.     Accordingly, Igloo is estopped from relying on any statutes of limitations in defense of this Action.

## IV.     CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action, on behalf of himself and all others similarly situated, as a class action pursuant to Federal Rules of Civil Procedure, Rule 23 ("Rule 23").

57.     Pursuant to Rule 23, Plaintiff seeks to represent a Class and Subclass composed of and defined as:

**The Class:** During the fullest period allowed by law, all persons who purchased a Rolling Cooler in the United States.

**The California Subclass:** During the fullest period allowed by law, all persons who purchased a Rolling Cooler in California.

58.     Excluded from the Class and Subclass are the Defendant and its officers, directors, management, employees, subsidiaries, and affiliates. Also excluded from the Class and Subclass are any district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

59.     Plaintiff reserves the right to revise or amend the above definitions and to add additional Classes or Subclasses based on the discovery of new information.

60.     This action has been brought and may be properly maintained as a class action under Federal Rule 23 because there is a well-defined community of interest in the litigation, the proposed Class and Subclass are each easily ascertainable, and Plaintiff is a proper representative of the Class and Subclass:

61.     **Numerosity (Rule 23(a)(1)):** The potential members of the proposed Class and Subclass, as defined and identified herein, are more than one hundred thousand, and so numerous that joinder of all members of the Class or Subclass is impracticable.

62.     **Typicality (Rule 23(a)(3)):** Plaintiff Zannettino's claims are typical of the claims of the Class and Subclass. Plaintiff is a customer who purchased one of the Rolling Coolers in California.

63.     **Commonality: (Rule 23(a)(2)):** Common questions of fact and law exist as to all members of the Class and Subclass and predominate over the questions affecting only individual members of the Class and Subclass. These common questions include but are not limited to:

   a.  Whether Defendant knew that the Rolling Coolers suffered from a defect, were defectively designed and/or manufactured and were not suitable for their intended uses;

   b.  Whether Defendant concealed from and failed to disclose to Plaintiff, Class Members, and Subclass Members the defective and hazardous nature of the Rolling Coolers;

   c.  Whether Defendant was under a duty to Plaintiff, Class Members, and Subclass Members to disclose the defective nature of the Rolling Coolers;

   d.  Whether Defendant benefited from selling defective and unsafe Rolling Coolers whose value was artificially inflated by Defendant's concealment of the defects in the Rolling Coolers;

   e.  Whether Plaintiff, other Class Members, and other Subclass Members, paid a higher price for the Rolling Coolers than they would have paid had they known of the defects in those coolers;

   f.  Whether Defendant breached its express warranties with Plaintiff, Class Members, and Subclass Members;

   g.  Whether Defendant breached its implied warranty with Plaintiff, Class Members, and Subclass Members by manufacturing, distributing, and/or selling Rolling Coolers that were not fit for their ordinary purpose of providing a reasonably safe product that is suitable for use as a towable and pullable wheeled or rolling cooler;

h.  Whether Defendant's acts and practices violated the Song-Berverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*;

i.  Whether Defendant impliedly warranted that the Rolling Coolers were of merchantable quality and fit for use;

j.  Whether, contrary to the applicable implied warranties, the Rolling Coolers at the time of sale and thereafter were not fit for their ordinary and intended purpose;

k.  Whether Igloo's acts and practices were unfair, fraudulent, or unlawful within the meaning of the UCL;

l.  Whether Defendant's conduct, including its failures to disclose and its misrepresentations regarding the nature, quality, and character of the Rolling Coolers, constitutes deceptive or false advertising in violation of the FAL

m.  Whether Defendant's acts and practices harmed Plaintiff, Class Members, and Subclass Members;

n.  Whether Plaintiff, Class Members, and Subclass Members are entitled to an injunction and equitable relief, including but not limited to, restitution and disgorgement;

o.  Whether Plaintiff, Class Members, and Subclass Members are entitled to damages and other monetary relief, and if so, what is the appropriate amount of damages or other monetary relief; and

p.  Whether Plaintiff, Class Members, and Subclass Members are entitled to reasonable attorneys' fees and costs.

64.  **Adequacy of Representation (Rule 23(a)(4))**: Plaintiff will fairly and adequately protect the interests of the Class and Subclass, respectively. Plaintiff's interests do not conflict with those of Class Members and/or Subclass Members, he has no conflict of interest with other Class Members and/or Subclass Members, is not subject to any unique defenses, and has retained competent and experienced counsel that has experience in complex consumer protection class action and cases, as well as sufficient financial and legal resources to prosecute this case on behalf of the class. Plaintiff and his counsel have no interest that is in conflict with or otherwise antagonistic to the

interests of other Class Members and/or Subclass Members. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass. Plaintiff and counsel anticipate no difficulty in managing the litigation of this as a class action.

65. **Predominance and Superiority (Rule 23(b)(3)):** In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual members of the Class and Subclass, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. Here, common issues predominate because liability can be determined on a class-wide basis even if some individualized damages determination may be required. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by complex legal and factual issues of the case to all parties and the court system. Furthermore, the expense and burden of individual litigation make it impossible for Class Members and Subclass Members to individually redress the wrongs done to them and individual Class Members and Subclass Members do not have a significant interest in controlling the prosecution of separate actions. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. If this action is not certified as a class action, it will be impossible as a practical matter for many or most Class Members and Subclass Members to bring individual actions to recover money from Defendant, due to the relatively small amounts of such individual recoveries relative to the costs and burdens of litigation. Plaintiff anticipates no difficulty in the management of this action which would preclude its maintenance as a class action.

66. Plaintiff reserves the right to add representatives for the Class and Subclass, provided Defendant is afforded an opportunity to conduct discovery as to those representatives.

//

//

//

### FIRST CAUSE OF ACTION

### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT

### (On behalf of Plaintiff and the Proposed Class)

67.    Plaintiff repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

68.    Plaintiff brings this cause of action on behalf of himself and the Class against Defendant, or, in the alternative, on behalf of himself and the California Subclass against Defendant.

69.    Defendant knew that the Rolling Coolers suffered from a defect, were defectively designed and/or manufactured and were not suitable for their intended uses.

70.    Defendant concealed from and failed to disclose to Plaintiff and other Class and Subclass Members the defective and hazardous nature of the Rolling Coolers.

71.    Defendant was under a duty to Plaintiff and Class and Subclass Members to disclose the defective nature of the Rolling Coolers because:

    a.  Defendant was in a superior position to know the true state of facts about the defect contained in the Rolling Coolers;

    b.  The omitted facts were material because they directly affected the safety of the Rolling Coolers;

    c.  Defendant knew the omitted facts regarding the defects of the Rolling Coolers were not known to or reasonably discoverable by Plaintiff and Class and Subclass Members;

    d.  On information and belief, Defendant spent time and resources developing a new tow handle for use on its wheeled or rolling coolers that was safer and eliminated the defect in the Rolling Coolers that caused them to be unsafe and unsuitable for their intended use. However, while Defendant was aware of the defects of the Rolling Coolers and was actively working to address those defects, it did not reveal the Rolling Coolers' true defective nature to Plaintiff and other Class and Subclass Members; and

    e.  Defendant actively concealed the defective nature of the Rolling Coolers from Plaintiff and other Class and Subclass Members.

72.    The facts concealed or not disclosed by Defendant to Plaintiff and other Class and Subclass Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase a Rolling Cooler or whether to pay a lesser price for it. Whether a consumer pulling a Rolling Cooler by its tow handle could suffer a laceration, crushed fingertip, or amputated fingertip is a material safety concern for someone purchasing a cooler. Had Plaintiff and other Class and Subclass Members known about the defective nature of the Rolling Coolers, they would not have purchased the Rolling Coolers or would have paid less for them.

73.    Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defects of the Rolling Coolers to induce Plaintiff and other Class and Subclass Members to purchase the Rolling Coolers. Plaintiff and other Class and Subclass Members justifiably relied on Defendant's omissions to their detriment. This detriment is evidenced by Plaintiff's, Class Members', and Subclass Members' purchase of Defendant's defective Rolling Coolers.

74.    On information and belief, Defendant continued to conceal the defective and hazardous nature of the Rolling Coolers even after Class Members began to report injuries and problems with the Rolling Coolers' tow handle.

75.    As a direct and proximate result of Defendant's misconduct, Plaintiff and other Class Members have suffered and will continue to suffer actual damages. Plaintiff and Class Members reserve their right to elect either to (a) rescind their purchases of the Rolling Coolers and to obtain restitution, or (b) affirm their purchases of the Rolling Coolers and recover damages.

76.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## SECOND CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (On behalf of Plaintiff and the Proposed Class)

77.    Plaintiff repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

78.     Plaintiff brings this cause of action on behalf of himself and the Class against Defendant, or, in the alternative, on behalf of himself and the California Subclass against Defendant.

79.     Defendant is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Rolling Coolers.

80.     Plaintiff and other Class Members formed a contract with Defendant at the time they purchased the Rolling Coolers. The terms of that contract included the promise and affirmation that the Rolling Coolers would be "free from defects in material or workmanship under normal use and service."[7] This express warranty became part of the basis of the bargain and is part of a standardized contract between Plaintiff and other Class Members on the one hand, and Defendant on the other.

81.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and other Class Members.

82.     Defendant breached the terms of this contract, including the express warranty, with Plaintiff and the Class by not providing a Rolling Cooler that could provide the benefits described above (being free from defects).

83.     As a result of Defendant's breach of its express warranty, Plaintiff and the Class have been damaged in the amount of the costs associated with repairing the defects described above, the costs associated with replacing the defective Rolling Coolers, as well as their Rolling Coolers' diminished value as a result of the defect.

84.     As explained above, the limited warranty fails of its essential purpose because:

a.  The defects in the Rolling Coolers existed at the time the Rolling Coolers left Igloo's control, and;

b.  Igloo, despite its knowledge of the defects and its knowledge that the Rolling Coolers should be covered by the express limited warranty, failed to disclose – either through concealment or omission – the existence of the defects in the Rolling Coolers at the point of sale (or following sale).

---

[7] https://www.igloocoolers.com/pages/warranty-service (This is a link to Igloo's warranty contained on its website, which states that it was last updated on March 18, 2021).

85.    Plaintiff and Class Members were not required to notify Igloo of the breaches of the express warranty because affording Igloo a reasonable opportunity to cure its breach of written warranty would have been futile given the Recall process set up by Defendant. Defendant's Recall process is entirely inconsistent with the terms of Defendant's express warranty.

86.    On information and belief, at all relevant times, Defendant's express warranty provided that "Igloo shall either repair the product free of charge or provide you with a replacement product if the product proves defective under the terms of this warranty." Yet, pursuant to the Recall process, Defendant is refusing to repair the product itself and is refusing to provide a replacement Rolling Cooler.

87.    On information and belief, at all relevant times, Defendant's express warranty provided that "If you have issues with your igloo product that was purchased at a retail store, please return it to the retailer if it is within the retailers [sic] returns policy." Yet, pursuant to the Recall process, Defendant instructs consumers who have purchased a Rolling Cooler **not** to try and take the cooler back to the store from which they bought it to seek a refund.[8]

88.    Plaintiff, on behalf of himself and other Class Members, seeks an order requiring Igloo to provide legal and equitable relief, including damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES
### (On behalf of Plaintiff and the Proposed Class)

89.    Plaintiff repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

90.    Plaintiff brings this cause of action on behalf of himself and the Class against Defendant, or, in the alternative, on behalf of himself and the California Subclass against Defendant.

---

[8] *See https://igloo90qtrecall.expertinquiry.com/us-faq?lang=en* (last visited Feb. 27, 2025) (Q. Can I take my cooler back to the store/place where I purchased it from to get a refund? A. No, please do not return your cooler to the store. Handle replacement kits will be sent by Igloo after registration is completed. To register, please fill out the recall registration form via the website www.igloo90qtrecall.expertinquiry.com.").

91.    Defendant was and is at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Rolling Coolers.

92.    The Rolling Coolers were and are, at all relevant times, a "good" within the relevant laws. Igloo knew or had reason to know of the specific uses for which the Rolling Coolers, as goods, were purchased.

93.    Igloo entered into agreements with retailers, suppliers, and/or contractors to sell its Rolling Coolers to be used by Plaintiff and other Class Members.

94.    Igloo provided Plaintiff and Class Members with implied warranties that the Rolling Coolers were merchantable and fit for the ordinary purposes for which the Rolling Coolers were used and sold and were not otherwise injurious to consumers, that the Rolling Coolers would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Igloo. These implied warranties became part of the basis of the bargain between Plaintiff and Class Members and Igloo.

95.    However, at the time of delivery, Igloo breached the implied warranties because the Rolling Coolers are not fit for their ordinary purpose of providing a reasonably safe product that is suitable for use as a towable and pullable wheeled or rolling cooler because, inter alia, the Rolling Coolers' tow handles contained defects rendering the Rolling Coolers unsafe and unreasonably dangerous. Therefore, these Rolling Coolers contained a fundamental defect that rendered them unfit for their ordinary purpose.

96.    As alleged herein, Plaintiff and Class Members were forced to completely discontinue their use of the Rolling Coolers either when they discovered the defects or when Igloo ultimately revealed the existence of the defects and admitted that they present an ongoing, serious safety risk.

97.    The aforementioned problems associated with the Rolling Coolers constitute safety risks, such that the Rolling Coolers are not safe or suitable for their intended uses, and therefore, there is a breach of the implied warranty of merchantability.

98.    Moreover, due to the inadequate and unfair nature of the Recall, it is not required and would be futile for Plaintiff to provide Igloo with a further opportunity to cure its breach.

99.    Plaintiff and Class Members have had sufficient direct dealings with either Igloo or one of their authorized retailers, representatives, and agents to establish privity of contract between Igloo, on the one hand, and Plaintiff and each Class Member, on the other hand.

100.    Moreover, privity is not required because Plaintiff and each of the Class Members are the intended beneficiaries of Igloo's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Rolling Coolers and have no rights under the warranties provided by Igloo. Igloo's warranties were designed for and intended to benefit the consumer only, and Plaintiff and Class Members were the intended beneficiaries of the Rolling Coolers. In fact, Igloo's own warranty states that, "The warranty is valid for the original retail purchaser and is not transferable" confirming it was not meant to apply to the retailer who would be the wholesale purchaser.

101.    More specifically, Igloo's manifest intent was that their warranties apply to Plaintiff and Class Members as third-party beneficiaries. Likewise, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the Rolling Coolers and the warranties.

102.    Igloo impliedly warranted that the Rolling Coolers are safe, suitable for use as wheeled or rolling coolers, of merchantable quality, and fit for their intended purposes. These implied warranties included, among other things: (i) a warranty that the Rolling Coolers manufactured, supplied, distributed, and/or sold by Igloo were safe and suitable for use as pullable or towable wheeled or rolling coolers; (ii) a warranty that the Rolling Coolers would be fit for their intended uses while the Rolling Coolers were being used; and (iii) a warranty that the Rolling Coolers would conform to all of the promises and affirmations of fact in the Rolling Coolers' advertising and marketing materials.

103.    Contrary to the applicable implied warranties, the Rolling Coolers, at the time of sale and thereafter, were and are not fit for their ordinary and intended purpose of serving as pullable or towable wheeled or rolling coolers. Instead, the Rolling Coolers contain a defective design and/or manufacture, as alleged herein. As a result of the defects, the Rolling Coolers fail to conform with the promises or affirmations of fact in their advertising and marketing materials.

104.    Igloo failed to adequately warn Plaintiff and other Class Members that the Rolling Coolers contained the defects, were not safe for use as pullable or towable wheeled or rolling coolers, and could cause serious injuries to users' fingers.

105.    Igloo breached the implied warranties because the Rolling Coolers were sold with the defects, which prevents the Rolling Coolers from even the most basic degree of fitness for ordinary use as a reliable and safe cooler product.

106.    Igloo's attempt to limit or disclaim any implied warranties is unconscionable and, therefore, unenforceable.

107.    Plaintiff's complete inability to use the Rolling Coolers for their intended purpose, resulting from the fact that the Rolling Coolers did not meet the most basic degree of fitness for providing a reliable and safe cooler product, renders any attempts to limit or disclaim damages substantively unconscionable.

108.    Contrary to the applicable implied warranties, the Rolling Coolers, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing a reliable and safe cooler product. Instead, the Rolling Coolers suffered, and continue to suffer, from the defects as alleged herein.

109.    Igloo's failure to adequately repair or replace the dangerous Rolling Coolers caused the warranty to fail in its essential purpose.

110.    As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (On behalf of Plaintiff and the Proposed California Subclass)

111.    Plaintiff repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

112.    Plaintiff brings this cause of action on behalf of himself and the California Subclass against Defendant.

113.    Defendant has received and retained a benefit from Plaintiff and other Subclass Members and inequity has resulted.

114.    Defendant has benefited from selling defective and unsafe Rolling Coolers whose value was artificially inflated by Defendant's concealment of the defects in the Rolling Coolers, and Plaintiff and other Subclass Members have overpaid for the Rolling Coolers.

115.    As a result of its wrongful acts, concealments, and omissions of the defects in the Rolling Coolers, as described above, Defendant charged higher prices for their Rolling Coolers than the Rolling Coolers' true value. Plaintiff and other Subclass Members paid a higher price for the Rolling Coolers than they would have paid had they known of the defects in those coolers.

116.    All Subclass Members conferred a benefit on Defendant.

117.    It is inequitable for Defendant to retain these benefits.

118.    Plaintiff and other Subclass Members were not aware of the true facts about the Rolling Coolers and did not benefit from Defendant's conduct.

119.    Defendant knowingly accepted the benefits of its unjust conduct.

120.    As a result of Defendant's unjust enrichment, Plaintiff and Subclass Members have suffered damages.

121.    Plaintiff, on behalf of himself and other Subclass Members, seeks an order requiring Igloo to make restitution to Plaintiff and Subclass Members and be disgorged of all profits arising out of the sale of the Rolling Coolers.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT,

### Cal. Civ. Code § 1790, *et seq.*

### (On behalf of Plaintiff and the Proposed California Subclass)

122.    Plaintiff repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

123.    Plaintiff brings this cause of action on behalf of himself and the Subclass against Defendant.

124.    At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of the Rolling Coolers. Defendant knew or should have known the specific uses for which the Rolling Coolers were purchased.

125.    Plaintiff and Subclass Members are "buyers" as that term is defined in Cal. Civil Code § 1791(b).

126.    The Rolling Coolers are "consumer goods" as that term is defined in Cal. Civil Code § 1791(a).

127.    Defendant provided Plaintiff and other Subclass Members with an implied warranty that the Rolling Coolers, and all parts thereof, were merchantable and fit for the ordinary purposes for which they were sold. The Rolling Coolers, however, are not fit for their ordinary purposes because, *inter alia*, the tow handles contained an inherent defect at the time of sale, which meant that they could cause significant injuries to users including: lacerations, crushed fingertips, and amputated fingertips.

128.    The Rolling Coolers are not fit for the purposes of safely serving as wheeled and towable or pullable coolers.

129.    Defendant impliedly warranted that the Rolling Coolers were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: a warranty that the Rolling Coolers manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for the purposes of safely serving as wheeled and towable or pullable coolers and would not be hazardous or unsafe when used for those purposes.

130.    Contrary to the applicable implied warranties, the Rolling Coolers at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Rolling Coolers were defective.

131.    Defendant's actions, as described herein, breached the implied warranty that the Rolling Coolers were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

132.    Plaintiff and other Class Members have been harmed as a result of Defendant's breaches of its implied warranties and its violations of the Song-Beverly Consumer Warranty Act.

133.    Plaintiff, on behalf of himself and other Subclass Members, seeks damages, civil penalties, and other legal and equitable relief pursuant to Cal. Civil Code § 1794.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL"),

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (On behalf of Plaintiff and the Proposed California Subclass)

134.    Plaintiff repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

135.    Plaintiff brings this cause of action on behalf of himself and the California Subclass against Defendant.

136.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

137.    Igloo committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, et seq., by systematically breaching its warranties, both express and implied, and by violation of the Song-Beverly Consumer Warranty Act, and violating Bus. & Prof. Code § 17500 *et seq.* as alleged throughout the Complaint.

138.    Igloo has committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., because the acts and practice described herein, including but not limited to selling Rolling Coolers with tow handles that Defendant knew or should have known were unsafe to use for their intended purpose, as well as Defendant's failure to provide an adequate remedy or compensation were immoral, unethical, oppressive, unconscionable and/or substantially injurious to Plaintiff and Subclass Members.

139.    Defendant's acts and practices were additionally unfair because the harm to Plaintiff and other Subclass Members is and was substantial and not outweighed by any countervailing benefits to consumers or competition. Further, Defendant's acts and practices were unfair because they were contrary to legislatively declared or public policy.

140.    Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it concealed the existence and nature of the defects affecting the Rolling Coolers. Defendant's representations, omissions, and active concealments about the defects were likely to mislead the public with regard to the true hazardous and defective nature of the Rolling Coolers.

141.    Defendant's unfair, deceptive, unlawful, and fraudulent acts or practices occurred repeatedly in the course of Defendant's business and were likely to mislead a substantial portion of the purchasing public.

142.    Plaintiff relied on Defendant's representations, omissions, and nondisclosures, and would not have purchased, or would have paid less for, the Rolling Coolers had they known the truth.

143.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent practices, Plaintiff has lost money.

144.    Plaintiff would consider purchasing a wheeled or rolling cooler from Defendant in the future if they could rely on Defendant's representations regarding those products.

145.    Plaintiff and other Subclass Members seek an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE FALSE ADVERTISING LAW ("FAL")

### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

### (On behalf of Plaintiff and the Proposed California Subclass)

146.    Plaintiff repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

147.    Plaintiff brings this cause of action on behalf of himself and the Subclass against Defendant.

148.    California's False Advertising Law, Bus. & Prof. Code § 17500 et seq. provides that:

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature

whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

149. Igloo's conduct alleged herein, including its failures to disclose and its misrepresentations regarding the nature, quality, and character of the Rolling Coolers, occurred in the course of Igloo's business, took place within the State of California, and constitutes deceptive or false advertising in violation of the FAL.

150. Igloo marketed, advertised, and represented the Rolling Coolers as merchantable and fit for purpose, fit for the ordinary purposes for which they were used and sold, and otherwise not injurious or hazardous to consumers.

151. Igloo misrepresented the true nature, quality, and hazardous and defective character of the Rolling Coolers by failing to disclose the existence of the defects described above and by misrepresenting that the Rolling Coolers were fit for their intended purposes of safely serving as wheeled and towable or pullable coolers.

152. To the contrary, the Rolling Coolers contained the dangerous defects regarding their tow handles at the time of purchase and no reasonable consumer would believe that, in light of the dangerous defects, that the Rolling Coolers were merchantable or fit for the ordinary purposes for which they were used and sold or were not otherwise injurious to consumers, where Plaintiff and other Subclass Members could not immediately identify the defects.

153.    At the time it made the misrepresentations and of its omissions, Igloo either knew or should have known about the existence of the defects in the Rolling Coolers, which rendered them unsafe. Igloo concealed, omitted, and failed to disclose this information to Plaintiff and other Subclass Members.

154.    Igloo has violated the FAL because its misrepresentations and omissions regarding the Rolling Coolers as set forth herein were material and likely to deceive a reasonable consumer.

155.    The misrepresented facts concerning the Rolling Coolers were also material because they concern central functions of the Rolling Coolers—namely, that the Rolling Coolers are safe, free of defect, and can be pulled safely by their towing handles.

156.    Plaintiff has standing to pursue claims under the FAL as he reviewed and relied on Igloo's packaging, advertising, representations, and marketing materials regarding the Rolling Coolers when selecting and purchasing a Rolling Cooler. Plaintiff and Subclass Members have suffered an injury in fact, including the losses of money or property, as a result of Igloo's unfair, unlawful, and/or deceptive practices.

157.    In reliance on the statements made in Igloo's advertising and marketing materials and Igloo's omissions and concealment of material facts regarding the quality and use of the Rolling Coolers, Plaintiff and other Subclass Members purchased the Rolling Coolers.

158.    Had Igloo disclosed the existence of the defects in the Rolling Coolers in its advertising and marketing, Plaintiff and Subclass Members would have learned of the true nature of the Rolling Coolers and would have acted differently. Had Plaintiff and other Subclass Members known about the true state of facts of the Rolling Coolers, they either would not have purchased the Rolling Coolers, or else would have paid substantially less for them. Accordingly, Plaintiff and Subclass Members overpaid for their Rolling Coolers and did not receive the benefit of their bargain.

159.    As a direct and proximate result of Igloo's conduct as set forth herein, Igloo has obtained ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Subclass Members who paid for the Rolling Coolers, which contained the defects.

160.    Plaintiff, on behalf of himself and Subclass Members, seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Igloo, to obtain restitution, and all other relief allowed under California law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class and Subclass prays for judgment against Defendant as follows:

A.    Certifying the proposed Class and Subclass as requested herein pursuant to Federal Rule of Civil Procedure 23;

B.    Entering an order appointing Plaintiff Zannettino as representative of the Class and Subclass;

C.    Entering an order appointing undersigned counsel to represent the Class and Subclass;

D.    Awarding Plaintiff and Class Members the right to elect either to (a) rescind their purchases of the Rolling Coolers and to obtain restitution, or (b) affirm their purchases of the Rolling Coolers and recover damages;

E.    Awarding Plaintiff, Class Members, and Subclass Members all actual, general, special, incidental, statutory, and punitive damages to which they are entitled;

F.    Awarding restitution and ordering disgorgement of all profits and unjust enrichment that Igloo obtained from Plaintiff and Subclass Members as a result of Igloo's unlawful, unfair, and fraudulent business practices;

G.    Granting injunctive relief as permitted by law or equity, including enjoining Igloo from continuing the unlawful practices as set forth herein and requiring Igloo to institute a recall program which provides for adequate notice of the recall to affected consumers and for adequate remedies to those consumers;

H.    Awarding attorneys' fees and costs as authorized by statute and governing law;

I.    Awarding both pre- and post-judgment interest on any monetary relief; and

J.    Awarding such other and further relief, at law and in equity, as the nature of this case may require or as this Court deems just and proper.

//

1

## DEMAND FOR JURY TRIAL

2      Plaintiff, on behalf of himself and members of the Class and Subclass hereby demands a jury

3 trial on all issues so triable.

4

5 DATED:  March 4, 2025                    Respectfully submitted,

6

7                                          /s/ Christina Tusan
                                           Christina Tusan
8                                          Adrian Barnes
                                           *Attorneys for Plaintiff and the Putative*
9                                          *Class and Subclass*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



United States
CONSUMER PRODUCT SAFETY COMMISSION

# Igloo Recalls More Than One Million 90 Quart Rolling Coolers Due to Fingertip Amputation and Crushing Hazards



Recalled Igloo 90QT Flip & Tow Rolling Cooler in Tactical Gray Body and Deep Slate Stone Lid

Case 1:25-cv-00744-JLH-EGT    Document 1    Filed 03/05/25    Page 32 of 37 PageID #: 32

    

## Name of Product:

Igloo 90 Qt. Flip & Tow Rolling Coolers

## Hazard:

The tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards.

## Remedy:

Replace

## Recall Date:

February 13, 2025

## Units:

About 1,060,000 (In addition, about 47,000 in Canada and 23,000 in Mexico)

## Consumer Contact

Igloo toll-free at 888-943-5182 from 8 a.m. to 5 p.m. ET Monday through Friday, email at igloo90qt@sedgwick.com, or online at www.igloo90qtrecall.expertinquiry.com or http://www.igloocoolers.com and click on "Recall Information" at the top of the page for more information.

3/4/25, 9:49 AM   Igloo Recalls More Than One Million 90-Quart Rolling Coolers Due to Fingertip Amputation and Crushing Hazards | CPSC.gov

Case 1:25-cv-00744-JLH-EGT   Document 1   Filed 03/05/25   Page 33 of 37 PageID #: 33

# Recall Details

**In Conjunction With:**



**Description:**

This recall involves Igloo 90 Qt. Flip & Tow Rolling Coolers manufactured prior to January 2024. The date of manufacture is imprinted on the bottom of the cooler in a circular pattern with an arrow pointing to the month of manufacture and the last two digits of the year of manufacture inside the circle.

The recalled coolers have a tow handle. "IGLOO" is printed on the side of the coolers. The coolers were sold in multiple body and lid color combinations, some of which are pictured above. The following cooler models with tow handles are included in the recall. The model number is located on labels affixed to the bottom of the cooler.

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 34143 | LATITUDE 90 ROLLER | 07/2021 – 12/2023 |
| 27019 | MAXCOLD LATITUDE 90 ROLLER<br><br>POWERADE | 11/2020 – 12/2023 |
| 34202 | MAXCOLD 90 ROLLER | 07/2021 – 12/2023 |
| 34241 | LATITUDE 90 ROLLER MAXCOLD | 07/2021 – 12/2023 |
| 34389 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |

3/4/25, 9:49 AM    Igloo Recalls More Than One Million 90-Quart Rolling Coolers Due to Fingertip Amputation and Crushing Hazards | CPSC.gov

Case 1:25-cv-00744-JLR-GT    Document 1    Filed 03/05/25    Page 34 of 37 PageID #: 34

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 34424 | LATITUDE 90 ROLLER | 10/2019 – 12/2023 |
| 34488 | LATITUDE 90 ROLLER MAXCOLD | 03/2019 – 12/2023 |
| 34506 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34527 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34547 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34553 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34577 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34578 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34591 | LATITUDE 90 ROLLER MAXCOLD | 11/2019 – 12/2023 |
| 34608 | LATITUDE 90 ROLLER MAXCOLD | 12/2019 – 12/2023 |
| 34619 | LATITUDE 90 ROLLER | 01/2020 – 12/2023 |
| 34624 | LATITUDE 90 ROLLER MAXCOLD | 01/2020 – 12/2023 |
| 34689 | MAXCOLD LATITUDE 90 ROLLER | 03/2020 – 12/2023 |
| 34724 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |

3/4/25, 9:49 AM Igloo Recalls More Than One Million 90-Quart Rolling Coolers Due to Fingertip Amputation and Crushing Hazards | CPSC.gov

Case 1:25-cv-00744-JLR-GCT Document... Filed 03/05/25 Page 35 of 37 PageID #: 25

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 34734 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34750 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34752 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34775 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34776 | ECOCOOL LATITUDE 90 ROLLER<br>MAXCOLD | 10/2020 – 12/2023 |
| 34789 | MAXCOLD LATITUDE 90<br>ROLLER | 11/2020 – 12/2023 |
| 34799 | LATITUDE 90 ROLLER | 12/2020 – 12/2023 |
| 34800 | MAXCOLD LATITUDE 90 ROLLER | 01/2021 – 12/2023 |
| 34818 | MAXCOLD LATITUDE 90 ROLLER | 03/2021 – 12/2023 |
| 34841 | LATITUDE 90 ROLLER MAXCOLD | 05/2021 – 12/2023 |
| 34844 | SPORTSMAN 90 LATITUDE ROLLER | 04/2021 – 12/2023 |
| 34869 | LATITUDE 90 ROLLER | 06/2022 – 12/2023 |
| 34993 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 34999 | LATITUDE 90 ROLLER | 08/2023 – 12/2023 |
| 35003 | MAXCOLD 90 QUART ECO ROLLER | 06/2023 – 12/2023 |
| 35019 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 35044 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |

3/4/25, 9:49 AM    Igloo Recalls More Than One Million 90-Quart Rolling Coolers Due to Fingertip Amputation and Crushing Hazards | CPSC.gov

Case 1:25-cv-00744-JLH-SGT    Document 1    Filed 03/05/25    Page 36 of 37 PageID #: 38

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 35045 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35052 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35053 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35054 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35065 | LATITUDE 90 ROLLER MAXCOLD | 11/2023 – 12/2023 |
| 49870 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 49928 | LATITUDE 90 ROLLER | 08/2019 – 12/2023 |
| 49937 | LATITUDE 90 ROLLER | 08/2018 – 12/2023 |
| 49938 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 50680 | MAXCOLD LATITUDE 90 QUART | 09/2023 – 12/2023 |

**Remedy:**

Consumers should immediately stop using the recalled coolers and contact Igloo for a free replacement handle.

**Incidents/Injuries:**

The firm has received 12 reports of fingertip injuries, including fingertip amputations, bone

fractures, and lacerations.

## Sold At:

Costco, Target, Academy, Dick's and other stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.

## Manufacturer(s):

Igloo Products Corp., of Katy, Texas

## Manufactured In:

United States

## Recall number:

25-136

Note: Individual Commissioners may have statements related to this topic. Please visit www.cpsc.gov/commissioners to search for statements related to this or other topics.

## Recall Complaint

If you are experiencing issues with a recall remedy or believe a company is being non-responsive to your remedy request, please use this form and explain the situation to CPSC.